### NENNEY & WHITE V. A. H. SCHLUTER & Co.

(Case No. 1712.)

1. ATTACHMENT — INTERVENTION OF OTHER CREDITORS.— An attaching creditor may intervene in a suit where a prior attachment has been levied in the interest of another, for the purpose of protecting his interest in the property seized under both attachments, provided he can show that the older attachment is based on a fraudulent demand or one having no existence; but he cannot thus intervene for the purpose of defeating the prior attachment on the ground of mere irregularities in its proceedings.

2. PLEADING — INSUFFICIENCY OF BILL OF INTERVENTION.— The following averments of fraud in a petition of intervention on the part of the subsequent attaching creditors are not of themselves sufficient to permit them to intervene in an attachment suit:  That the debt of a creditor attaching was placed at more than it was worth; that the excess of its real value being secured by a mortgage on certain property of his debtor, the property *pendente lite* had been sold for much less than its value, and purchased by one in collusion with the debtor; and also alleging conspiracy on the part of the parties to the attachment suit, by plaintiff permitting the defendant to withdraw his answer, so as to facilitate judgment in favor of the attaching creditor.

3. SAME.— The petition for intervention must show that the interest of the parties complaining in the attached property had suffered, or was likely to do so, from the alleged fraudulent transactions between the original parties to the suit.

APPEAL from Marion.   Tried below before the Hon. B. T. Estes.

Schluter & Co., the appellees, instituted suit February 12, 1884, by attachment against French & Son upon a debt evidenced by a note, not then due, for $994.38, and an account for $73.78.

On February 15, 1884, suits were instituted by Nenney & White for $1,553; by Moore & Murchison for $1,662, and J. M. Wilcox for $215.74.   All these suits were instituted in the district court of Marion county, and in each a writ of attachment was sued out and levied upon the same property (among other things) upon which Schluter & Co.'s writ had been levied.

On May 16, 1884, French & Son filed their answer to the suit of Schluter & Co., moving to quash the attachment, demurring to the petition, and reconvening in damages for the wrongful suing out of their attachment.   On that day, likewise, Nenney & White, Moore & Murchison, and J. M. Wilcox, appellants, filed their joint plea of intervention, which was afterwards amended.

On 17th of June Schluter & Co. filed a paper with the signature of French & Bro. subscribed to it, in which they confessed the justness of Schluter & Co.'s claim, and declared their answer of May 16th to have been filed under a mistake and that they did not wish to interpose any defense to the suit.

To the amended plea of intervention Schluter & Co. filed a general demurrer and motion to strike out, as well as special exceptions. The court sustained the general demurrer of plaintiffs to the intervention of appellants and rendered judgment against them for the costs of the intervention, at the same time rendering judgment in favor of Schluter & Co. against John French & Son for the full amount of the debt claimed, with a foreclosure of plaintiffs' attachment lien, and ordering the payment of proceeds of property levied upon to plaintiffs, Schluter & Co., in satisfaction of said judgment. From this judgment, and the order overruling a motion for new trial, intervenors appealed to this court.

*K. R. Craig* and *C. A. Culberson*, for appellants, as to the right of appellants to intervene, and the sufficiency of their bill of intervention, cited: Peiser *v.* Peticolas, 50 Tex., 638; Peticolas *v.* Carpenter, 53 Tex., 23; Smalley *v.* Taylor, 33 Tex., 669 (citing Eccles *v.* Hill, 13 Tex., 67; Burditt *v.* Glasscock, 25 Tex. Sup., 45); Graves *v.* Hall, 27 Tex., 154; Mussina *v.* Goldthwaite, 34 Tex., 131; Sayles' New Treatise, § 606; Drake on Attachment (3d ed.), secs. 272, 273, 274, 275, 276.

No briefs on file for appellees.

WILLIE, CHIEF JUSTICE.— That a subsequent attaching creditor may intervene in a suit wherein a prior attachment has been issued and levied, for the purpose of protecting his interests in the property seized under both attachments, was decided a few days since in the case of Joseph Peters Furniture Company *v.* Dickey.

This right to intervene, however, can be exercised for certain purposes only and under a proper state of facts, which should be set forth in the intervenor's petition. He cannot make himself a party for the purpose of defeating the attachment for irregularities in the proceedings; but if he can show that the older attachment is based upon a fraudulent demand or one which has in fact no existence, he may attack the lien secured by it on that ground to protect his interest in the property. Sayles' New Treatise, § 606, and authorities cited.

In so far, therefore, as the bill of intervention sought to quash the attachment it was unauthorized, and the special demurrer setting up this objection to it was properly sustained.

It was also made a ground of demurrer that the bill did not show facts sufficient to constitute fraud such as to authorize the intervention. If this was so, the intervention was properly dismissed, the

appellants having declined to amend after the demurrer was sustained. The averments as to fraud are in brief about as follows: That the debt of plaintiffs sued on was placed at $500 more than was justly due upon it; that this $500 was secured, along with other debts, in a deed of trust upon a portion of the same property levied on under the attachment; that the property mentioned in this deed was more than sufficient to pay all the debts secured by it; and that before bringing their suits the intervenors had been led to believe, from statements of the plaintiffs, that the $500 being secured by the deed would be deducted from the claim sued on. It was further alleged that the property mentioned in the deed had been sold during the pendency of the suit and had brought less by reason of the deed of trust being on record at the time, and the impression thereby created that the deed secured the said $500 in addition to the other sums specified in it, thus rendering the equity of redemption less valuable to that extent.

The bill also charged collusion between one Bernish and the plaintiffs to prevent competition at the sale of the property, by which Bernish was enabled to buy it for $1,500 less than it otherwise would have brought, and at a sum previously agreed on between himself and the plaintiffs.

Collusion between plaintiffs and defendants is also alleged, which resulted in a withdrawal of the answer so as to facilitate a judgment for Schluter & Co. for the full amount claimed in their petition.

It is difficult to see from these allegations any fraud or attempt at fraud likely to benefit the plaintiffs or defendants at the expense of the intervenors. A sale of the equity of redemption for $500 less than it should have brought did not necessarily benefit Schluter & Co., for the purchaser was bound to pay them so much only as was justly due upon this deed to free the property from its lien. It would seem, too, that it was to their interest that the property should bring as much as possible in order to pay their debt, as there were three attachments upon it to be satisfied before the plaintiffs could receive any portion of the proceeds. It was certainly to the interest of the defendants that their property should sell as high as possible at a sale made for the payment of their debts.

The Bernish transaction seems to have had no other object than to benefit Bernish alone, neither plaintiffs nor defendants apparently profiting by it.

But if it need not necessarily appear in such case that the parties to the bond will profit by their conduct, it should certainly be

shown that the interest of the parties complaining in the attached property had suffered, or was likely to do so, from the fraudulent transaction. They were allowed to intervene for the sole purpose of protecting that interest, and unless that interest was jeopardized they were improperly in the case. But it is not averred that the enforcement of the attachment for the $500 claim, or that the small price for which the property sold, would deprive the intervenors of any benefit they would otherwise derive from their attachments.

It is not said that if the claim is reduced $500 the amount secured by the attachments of intervenors will be any more, nor that this would have been the effect of a sale of the property for its full value.

They do not seem to fear that any loss will accrue to them from the decreased price at which the property was sold, and the only allegation in reference to the other matter is that, if either the whole or any part of the plaintiffs' debt is satisfied, there will be no property liable to execution out of which the intervenors' debt can be made. It would seem from this that the intervenors would suffer the same damage whether their attachment had been levied on the property or not, or whether the whole debt of plaintiffs, including the $500 or a part of it, deducting that amount, should be foreclosed upon the attached property. It might be inferred in some cases that the decrease of the amount to be paid under a prior attachment would increase the amount received under a subsequent one; but such facts should be the subject of averment, and not of inference. They certainly will not be inferred where the damage to the complaining party is alleged to be of a different character.

We do not think that the bill of intervention shows any prejudice to the interests of the intervenors in the attached property, arising from the alleged fraudulent conduct of the other parties to the suit, and hence they were not authorized to intervene for the protection of such interests. The court did not err in sustaining the demurrer to their bill, and, as they did not ask to amend, the bill was properly dismissed.

AFFIRMED.

[Opinion delivered November 7, 1884.]