JOHN L. GRAVES v. W. N. HALL.

The general principle that a party having an interest in the subject matter in litigation between other parties may intervene in such suit, for the purpose of ascertaining and protecting his interest, is a well settled rule of practice. The fact that the property or fund to which the intervenor sets up a claim has been placed by an order of court in the suit between the original parties in the hands of a receiver, would, if it had any effect, rather strengthen than detract from his right to intervene and assert his interest in the fund.

See the pleadings in this case, in which it was held that a motion to dismiss a petition of intervention presented facts that might be pertinent upon a trial upon the merits; or, if intended as deductions of law and fact from the allegations in the petition of intervenor, they did not justify the dismissal of the petition by the court; and where it was also held, that the intervenor had not been guilty of laches by failing to file his petition within time.

APPEAL from Freestone. Tried below before the Hon. N. W. Battle.

On the 17th day of July, 1858, W. N. Hall, the appellee, filed his petition in the District Court of said county, against Harrison W. Hall and Henderson H. Hall, merchants and partners, using the name of H. W. Hall & Bro.

The petition alleged that the defendants, on the 19th day of January, 1857, made and delivered to plaintiff their five several promissory notes of that date—two notes for $2900 each, one due 1st January, 1858, the other due 1st day of January, 1859; one note for $290 67, due 1st January, 1858; one note for $1000, due 1st January, 1859; and one note for $2000, due January 1, 1860; upon which there were credits amounting to $1095 60. Petition further alleged that said notes were given in consideration of merchandise sold and delivered by plaintiff to defendants, and for certain lots of land in the town of Cotton Gin, in said county, which were, also, sold by plaintiff to defendants. That at the time of said sale defendants had agreed to give plaintiff a mortgage upon said property to secure the purchase money, but failed and refused to do so. Petition further alleged that said defendants had fraudulently, and without consideration, transferred

Graves v. Hall.

said merchandise to Benjamin F. Freeman, and are about to transfer all their property, not subject to execution, to him for the purpose of defrauding plaintiff and other creditors out of their debts; that said Freeman had advertised said merchandise for sale; that if the sale is made, he fears that the proceeds will be so secreted that they cannot be reached, so as to be subjected to the debt of plaintiff; made Freeman party defendant; prayed for citation and writ of attachment.   On the 17th day of July, 1858, the writ of attachment was levied upon some negroes, the lots mentioned in petition, the merchandise contained in an inventory returned into court; also, the "notes, accounts and books pertaining to the store in Cotton Gin, as the property of H. W. Hall and H. H. Hall."

Benjamin F. Freeman disclaimed all interest in any of the property attached.   H. W. and H. H. Hall pleaded general denial and specially certain set-offs, and also damages.

On the 10th of March, 1859, the parties filed an agreement appointing W. C. Wilson as an agent to take possession of the notes and accounts attached by the sheriff, and proceed to collect them; the money thus collected to be held subject to the future order of the court; also, to sell the goods and merchandise, and the proceeds thereof, after deducting reasonable expenses, to be held subject to the future order of the court.

On the 9th day of November, 1858, the defendant filed a motion to quash the writ of attachment.   At the May Term, 1859, the court quashed the levy as to the books, accounts and notes, and overruled the motion as to all things else.   On the 13th day of May, 1859, the plaintiff filed an amended petition, setting out the appointment of Wilson as receiver, and alleged that Wilson had proceeded to sell the goods and to collect a portion of the notes and accounts; had made a report to the court, and held the proceeds subject to the order of the court; that the notes and accounts, or the greater portion of them, were the proceeds of the identical goods and merchandise purchased by defendants from plaintiff, which formed a portion of the consideration sued on; that defendants were wholly insolvent; prayed that the funds in the hands of Wilson be enjoined, subject to the judgment of the

court in this case; and that Wilson be appointed receiver and to collect the remainder of the notes and accounts uncollected. Injunction granted, and Wilson appointed receiver.

On the 14th day of May, 1859, John L. Graves filed a petition of intervention, alleging that said H. H. Hall and H. W. Hall, on the 8th day of November, 1858, executed and delivered to W. C. Wilson, for the benefit of certain creditors of the late firm of H. W. Hall & Bro., therein named, a certain deed of assignment, embracing, among other things, all the books of account, promissory notes and other assets belonging to the said firm of H. W. Hall & Bro.; that Wilson refused to act; whereupon parties interested appointed intervenor trustee in place of Wilson, as evidenced by endorsement of said deed. That it was the understanding between the parties that if the attachment, then existing in this case, should be quashed, the property so attached should be delivered by the said Wilson to the said defendants, or their order; that so much of said levy as attached the books, accounts and notes, had been quashed; that intervenor, after the order quashing said levy in part as aforesaid, and before said writ of injunction was granted, demanded the books, accounts and notes, so released, from said Wilson, who refused to deliver them up. Prayed that the injunction be dissolved; that Wilson be required to deliver up to intervenor the said books, accounts and notes, and all moneys collected by him on account thereof. The deed of assignment was filed with the plea of intervention, which, together with the endorsements thereon, was made a part of the petition.

The intervenor moved to dissolve the injunction. The plaintiff moved to dismiss the petition of intervention, on the following grounds, to-wit: The facts set out in the petition are insufficient in law to entitle him to relief; the pretended assignment is illegal, fraudulent and void; the endorsement on said trust, pretending to substitute Graves as trustee, is not signed by the proper parties; the intervenor has no right to interfere in this case. The motion to dissolve was overruled. The motion to dismiss sustained. The case proceeded to judgment against H. W. Hall & Bro. From the judgment dismissing the petition of intervention, the intervenor appealed. The defendants did not appeal.

*James C. Walker*, for appellants.—The 2d error assigned, if determined against the appellant, disposes of the case, which is as follows:

2. "The court erred in sustaining the exceptions of plaintiff to the intervenor's petition, and dismissing the same."

The allegations of the intervenor are to be taken as true, while being considered under the exception of plaintiff. And, if true, does the petition show any rights in the intervenor, that may be affected by the decree prayed for by the plaintiff? If so, then the right of the intervenor to "appear and interplead," has been repeatedly determined by this court in favor of the right. "Under our liberal system of procedure, all parties, whose interests *may be affected* by the decision, may appear *voluntarily*, or be cited, and their respective rights be adjudicated in the same proceeding." (Garrett v. Gaines, 6 Tex., 435; Chandler v. Fulton, 10 Tex., 2; Pierce v. Massey, 7 Mart. N. S., 196.)

There is no doubt that under our system, which abhors a multiplicity of suits, a third party may intervene in a suit between others, for the "protection of his own rights." (Eccles v. Hill, 13 Tex., 67; Wright v. Neathery, 14 Tex., 211.)

That the intervenor was invested with rights then in litigation before the court, is evident from the face of the petition and exhibits. And that those rights would be affected by the decree, is also evident, from the fact that the court in rendering the decree, required the plaintiff to give bond and security in favor of the intervenor, before plaintiff should be entitled to the money collected on the notes. If then the intervenor had rights, and those rights were likely to be affected, the court erred in dismissing his petition.

*D. M. Prendergast*, for the appellee.—The court did not err in dismissing the petition of the intervenor.

1. The petition came too late. The suit between the original parties was called the 13th day of May, 1859—the attachment was then quashed as to the levy on the notes and accounts, an injunction immediately granted at the suit of the plaintiff, restraining the money, notes and accounts in the hands of Wilson, and

the case set for trial the next morning. The following morning, when the case came on for trial, the intervenor presented his petition. This was the first notice the plaintiff had of the assignment, or of an intention to intervene.

When the petition of the intervenor was filed, the day before the trial, there was no evidence that it was brought to the notice of the court or the plaintiff until the case was called for trial, and no excuse was given for the delay. This court say: "To have entertained the application under these circumstances would have operated a surprise and manifest injustice to the plaintiff." (Van Bibber v. Geer, 12 Tex., 18.)

It is doubtless proper practice, under our system, as a general rule, and where it is necessary for the protection of his rights, to allow "a third party to intervene in a suit between others." "But this cannot be permitted where it would retard the principal suit so as to operate injustice to others." (Eccles v. Hill, 13 Tex., 67.)

In this case the assignment to the trustee was made November 8th, 1858, the original suit instituted July 17th, 1858. On the 9th November, 1858, the day after the date of the assignment, (and during a term of the court,) a motion to quash the attachment was filed by the original trustee and one of the witnesses to the assignment, as attorneys for the defendants; and this motion is continued one term of the court, and no excuse is given for this delay.

How could the plaintiff have been prepared to meet the allegations in the petition of the intervenor, having had no notice of any such claim as that set up until the principal suit was up for trial? He was taken completely by surprise, and would have been forced to continue the case had the petition not been dismissed. Such a course would have operated gross injustice to the plaintiff.

2. The petition itself was insufficient. The case it makes out shows that, if it had even been presented in time, it could not have been maintained.

The deed of trust had not been registered, and there is no averment that the plaintiff had any notice of its existence until after the procurement of the injunction, and when the petition was

presented. (O. & W. Dig., art. 1723, 1730; Givins v. Taylor, 6 Tex., 321.) The subject of contest was then in the custody of the law, at the suit and for the benefit of the plaintiff. The petition shows that the defendants and makers of the deed of trust, after its execution, through their attorneys, (one of whom was trustee, and another a witness to the deed and attorney for the intervenor,) entered into an agreement with the plaintiff, by which the notes and accounts in contest were placed in the hands of one of the attorneys of defendants (the same who was trustee,) for collection—the proceeds to be by him filed, subject to the future order of the court. No claim was then set up under the deed of trust. Will not the parties, under these circumstances, be held to have waived whatever rights they may have had under the deed? Are they not now estopped from setting up what they then could, but failed, to assert?

And further, the petition does not sufficiently show that the intervenor would be injuriously affected by the decision of the suit between the original parties.

"It is not sufficient that the interpleader has claims to establish and enforce against plaintiff or defendant, to authorize an interference in their dispute; he must show the decision of the matter at issue between them will, or may, affect his rights." (Pierce v. Massey, 7 Mart. N. S., 196.)

The intervenor in this case does not even claim to have any demands against the plaintiff or defendant. He asserts a claim to what he shows to be in the hands of a third person, and not a party to this suit, (the same person, too, who had been trustee,) of whom he avers he made a demand before the issuance of the injunction. If he has any rights at all it is against such third person, by his own showing, and he has no right to interpose in this suit. The suit might well go on and be determined between the original parties, and still the intervenor assert whatever rights he might have.

From these considerations it is insisted by the appellee that the court did not err in dismissing the petition.

MOORE, J.—The general principle that a party having an interest in the subject matter of litigation between other parties, may intervene in such suit for the purpose of ascertaining and protecting his interest, is a well settled rule of practice. The fact that the property or fund to which the intervenor sets up a claim has been placed, by an order of the court in the suit between the original parties, in the hands of a receiver, would, if it had any effect, rather strengthen than detract from his right to intervene and assert his interest in the fund.

The exceptions taken by the plaintiff, in the original suit, in the court below, to the intervenor's petition, manifestly presented no grounds for its dismissal. All of them (except the general one, that the petition was insufficient, &c., which was clearly not well taken,) presented matters of fact that may be pertinent upon a trial upon the merits; or, if intended as deductions of law and fact from the allegations in the intervenor's petition, they are not believed to be so warranted by it, as to justify the dismissal of his petition by the court.

The exceptions taken to the petition in the court below have not been insisted upon by the counsel for the appellee in his argument before us. He now urges that the petition was properly dismissed, because it was not filed in due time. It can hardly be denied that the court in which the suit is pending should have some discretion as to this. It would be a sufficient answer to the objection, however, in the present case, to say that the petition was not excepted to for any reason of this sort in the District Court; nor, in fact, could it have been. The assignment, it is said by appellee, was made during a term of the District Court at which the cause seems to have been continued for his counsel; the petition of the intervenor was filed at the next term. This, under the circumstances of this case, can hardly be regarded as such laches as should deprive a party of the privilege of being heard. More than this, the judgment of the District Court establishes the fact that appellee's attachment gave him no interest in the fund to which the intervenor asserts a claim. And it was not until the very day that the latter asked leave of the court to

intervene, that the appellee so amended his petition as also to set up, in his own behalf, an equitable right to the fund. Certainly, under these circumstances, the exception now urged to the petition must be regarded as untenable.

The judgment must, therefore, be reversed, and the cause remanded for further proceedings.

Reversed and remanded.